### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

ROZIK PARRISH,

       Plaintiff,

vs.                                                                                   No. CIV 10-0398 JB/LFG

VALERO RETAIL HOLDINGS, INC.,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Compel Arbitration and Dismiss or Stay Proceedings, filed April 30, 2010 (Doc. 5).  The Court held a hearing on June 11, 2010.  The primary issue is whether the arbitration agreement that Plaintiff Rozik Parrish signed as part of Defendant Valero Retail Holdings, Inc.'s ("Valero") employment application is enforceable, if the consideration was based upon an offer of at-will employment and on a mutuality of obligation to arbitrate.  Because the Court finds that adequate consideration supports the agreement to arbitrate, the Court will grant the motion to compel arbitration and will stay the case.

### FACTUAL BACKGROUND

Valero hired Parrish as an employee on September 6, 2001.  See Motion at 1. Parrish worked as an area manager and was responsible for overseeing eight of Valero's retail stores in Albuquerque, New Mexico.  See Notice of Appeal and Complaint for Damages ¶ 4, at 6, filed April 23, 2010 (Doc. 1-1).  Her responsibilities included direct oversight and involvement with, among other activities, receiving merchandise from out-of-state vendors; selling the merchandise; maintaining store equipment manufactured by out-of-state suppliers; and selling gasoline and merchandise to out-of-state customers.  See Affidavit of Karen

Pena ¶ 11, at 2 (executed April 29, 2010), filed March 30, 2010 (Doc. 5-1)("Pena Aff.").  Valero

engages in interstate commerce in many ways, including by: (i) selling products that out-of-state

vendors supply; (ii) advertising in other states; (iii) operating retail stores in Arizona, California,

Colorado, Louisiana, New Mexico, Oklahoma, Texas, and Wyoming; (iv) being insured by

out-of-state insurance carriers; and (v) conducting business through the use of interstate mail and

telephone calls.  See Pena Aff. ¶ 10, at 2.

Included in Valero's Application for Employment, which Parrish completed and signed on

August 27, 2001, is an arbitration clause, stating:

> I agree to be bound by and accept as a condition of employment the terms of the
> *Dialogue* Dispute Resolution Plan and Rules (except if my employment is governed
> by an applicable collective bargaining agreement), which are incorporated in this
> application by reference.  I understand that Employer also agrees to be bound by the
> terms of the *Dialogue* plan.  I understand that the *Dialogue* plan requires me to
> submit all legal claims arising from my employment or termination of my
> employment, including disputes regarding legally protected rights, the Work Injury
> Program, or benefits claims, to binding arbitration instead of a lawsuit in state or
> federal court.

Pena Aff. ¶ 8, at 2.  See Pena Aff. Exhibit A1, Rozik Parrish's Application for Employment at 2

(signed August, 27, 2001), filed March 30, 2010 (Doc. 5-2).  The Dialogue plan is a dispute

resolution process that includes a mutually binding agreement to arbitrate all disputes arising out

of an individual's employment with Valero, including but not limited to claims of discrimination

based on disability.  See Pena Aff. ¶ 5, at 1; Pena Aff. Exhibit A2, Dialogue Plan and Rules at 2-5,

filed April 30, 2010 (Doc. 5-3).  In accordance with the Federal Arbitration Act ("FAA"), the

Dialogue plan provides for the exclusive, final, and binding resolution of all employment disputes.

See Pena Aff. ¶ 6, at 1; Pena Aff. Exhibit A2, Dialogue Plan and Rules at 4 ("The [Federal

Arbitration] Act shall apply to this Plan, the Rules, and any proceedings under the Plan or the Rules,

including any actions to compel, enforce, vacate, or confirm proceedings, awards, orders of a

Referee, or settlements under the Plan or the Rules."). Eligible disputes subject to the Dialogue plan include "any legal or equitable claim, demand, or controversy, whether in tort, in contract, [or] under statute . . . which relates to, arises from concerns, or involves in any way . . . [t]he employment or potential reemployment of an Employee, including the compensation, terms, conditions, or termination of such employment . . . ." Pena Aff. Exhibit A2, Dialogue Plan and Rules at 3. Covered disputes are further defined in relevant part as "[a]ny other matter related to the relationship between the Employee and the Company, including, by way of example and without limitation, allegations of . . . [p]rohibited forms of employment discrimination such as discrimination based on race, religion, color, sex [or] age. . . ." Pena Aff. Exhibit A2, Dialogue Plan and Rules at 3. The Dialogue Plan and Rules provide: "This plan may be amended by Sponsor at any time by giving at least 10 days notice to current employees. However, no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules." Pena Aff. Exhibit A2, Dialogue Plan and Rules at 3.

Once Parrish's employment with Valero began, she signed an Acknowledgment Form stating that she acknowledged that she had received a copy of the Dialogue plan and understood that all claims arising out of her employment or termination of her employment are required to be submitted to final and binding arbitration, as set forth in the Dialogue plan. <u>See</u> Pena Aff. ¶ 9, at 2; Pena Aff. Exhibit A1, Acknowledgment Form at 3 (Doc. 5-2). Valero terminated Parrish's employment on December 16, 2008. <u>See</u> Complaint ¶ 21, at 10. Parrish alleges that Valero discriminated against her based on age, sex, and national origin when it terminated her employment. Valero denies that Parrish suffered discrimination on the basis of any protected characteristic.

## **PROCEDURAL BACKGROUND**

Parrish filed her Notice of Appeal and Complaint for Damages in the Second Judicial District

Court, Bernalillo County, New Mexico, on March 25, 2010.  <u>See</u> Doc. 1-1.  In her Complaint, Parrish alleges that, when Valero terminated her, she suffered discrimination under: (i) the Age Discrimination in Employment Act, 29 U.S.C. § 621 through § 634 ("ADEA"); (ii) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; and (iii) the New Mexico Human Rights Act, NMSA 1978, § 28-1-1 through § 28-1-15.  <u>See</u> Complaint ¶¶ 25-45, at 10-13.  She also brings actions for breach of contract, and for breach of the implied covenant of good faith and fair dealing. <u>See</u> Complaint ¶¶ 46-56, at 13-14.  Valero removed the case to federal court on April 23, 2010. <u>See</u> Notice of Removal, filed April 23, 2010 (Doc. 1).

On April 30, 2010, Valero filed its motion to compel arbitration.  <u>See</u> Defendant's Motion to Compel Arbitration and Dismiss or Stay Proceedings (Doc. 5).  Valero argues that, as evidenced by her signed employment application, Parrish agreed to be bound by the Dialogue plan, including its binding arbitration agreement, and argues that the claims that she brought in her Complaint are within the scope of that arbitration agreement.  <u>See</u> Motion at 3-4.  Valero contends that the Court should compel Parrish to arbitrate her claims, if she should choose to continue to pursue them. <u>See</u> Motion at 5.

Parrish disputes that a binding arbitration agreement exists and thus argues that the Court should dismiss Valero's motion.  <u>See</u> Plaintiff's Response to Defendant's Motion to Compel Arbitration and Dismiss or Stay Proceedings at 1, filed May 18, 2010 (Doc. 9).  She argues that the agreement to arbitrate that she signed is an illusory promise based upon continued at-will employment, and thus is unenforceable.  <u>See</u> Response at 3-4.  Parrish also argues that an agreement to arbitrate based upon either continued at-will employment or a reciprocal promise to submit to arbitration lacks sufficient consideration to support a finding of a binding agreement to arbitrate. <u>See</u> Response at 5.

In reply, Valero argues that two different acts or promises constitute sufficient consideration for the arbitration agreement in this case: (i) Parrish's employment was conditioned on her acceptance of the Dialogue plan -- it was a pre-hire agreement; and (ii) there is a mutual promise to arbitrate that binds and applies to both the employee and to the company. See Defendant's Reply Brief at 1-2, filed June 1, 2010 (Doc. 12). Valero argues that the arbitration agreement that Parrish signed, which was a condition of her becoming employed by Valero, is distinct from an arbitration agreement signed after employment has commenced. See Reply at 2.

At the hearing, Jeffrey Lowry, Valero's attorney, argued that, if Parrish's contention, that an offer of at-will employment is not sufficient consideration, is a correct statement of the law in New Mexico, it may raise a constitutional question under the FAA's supremacy clause provision, especially if New Mexico law treats arbitration agreements less favorably than other agreements. See Transcript of Hearing at 2:17-3:5 (taken June 11, 2010)("Tr.")(Lowry).[1] Mr. Lowry argued that the Court need not reach the constitutional issue in this case, however, because New Mexico case law has not found that an offer of at-will employment is insufficient consideration for an arbitration agreement. See Tr. at 3:10-15 (Lowry). He contended that there does not appear to be a dispute that an offer of employment is valuable to a person or that an offer of employment constitutes consideration for a contract. See Tr. at 3:16-4:4 (Lowry). Mr. Lowry argued that Valero must also comply with the arbitration agreement and has no right to not comply with it. See Tr. at 4:5-25 (Lowry). He requested that, if the Court compels arbitration, the Court stay the proceeding. See Tr. at 5:3:4 (Lowry). In response, Jason Burnette, Parrish's counsel, conceded that the sole issue before the Court is whether there is an enforceable agreement to arbitrate. See Tr. at 5:7-10

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

(Burnette).  He argued that the New Mexico Court of Appeals in <u>Piano v. Premier Distributing Co.</u>, 137 N.M. 57, 107 P.3d 11 (Ct. App. 2004), <u>cert. denied</u>, 110 P.3d 73 (2005), found that an agreement to arbitrate based upon either continued at-will employment or a reciprocal promise to submit to arbitration was not enforceable, because the promises made were illusory, and contended that the same two conditions were present in this case.  <u>See</u> Tr.  at 5:20-6:2 (Burnette).  He argued that a promise of at-will employment which an employer may terminate at any time is not sufficient consideration because it is an illusory promise.  <u>See</u> Tr. at 6:23-7:1 (Burnette).  Mr. Burnette also argued that the Dialogue plan permits Valero to give ten-days notice that it is making a change to the program and thirty-days notice that Valero will not participate in the arbitration; however Parrish does not have the same right.  <u>See</u> Tr. at 7:22-8:6 (Burnette).  The Court inquired whether any New Mexico court has found that a pre-employment agreement to arbitrate is unenforceable, and Mr. Burnette stated that he did not know of one, but argued that, regardless of the timing of the agreement, at-will employment is not valid consideration.  <u>See</u> Tr. at 8:23-9:11 (Court, Burnette).  He argued that an employer could give some sort of sufficient consideration other than the at-will employment to make the arbitration agreement valid.  <u>See</u> Tr. at 11:6-12:11 (Court, Burnette).  Mr. Burnette indicated that, if the Court finds that the agreement is valid and compels arbitration, Parrish would like the Court to stay this case.  <u>See</u> Tr. at 15:6-18 (Burnette, Court).  Mr. Lowry further remarked that the New Mexico Court of Appeals found in <u>Sisneros v. Citadel Broadcasting, Co.</u>, 140 N.M. 266, 142 P.3d 34, 42 (2006), which was decided after <u>Piano v. Premier Distributing Co.</u>, that an employer's restricted right to change terms of an arbitration agreement is sufficient consideration for the agreement and is not illusory.  <u>See</u> Tr.  13:1-16 (Lowry).

## LAW REGARDING ARBITRATION AGREEMENTS AND THE FAA

"The FAA reflects the fundamental principle that arbitration is a matter of contract."

Rent-A-Center, West, Inc. v. Jackson, No. 09-497, 2010 U.S. LEXIS 4981, at *7 (June 21, 2010). "[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 270 (1995). "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent-A-Center, West, Inc. v. Jackson, 2010 U.S. LEXIS 4981, at *8 (internal citations omitted).

Under § 4 of the FAA, a party "aggrieved" by the failure of another party "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If a party is aggrieved by the refusal of another to arbitrate under a written agreement, the district court, upon petition, "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Section 2, the "primary substantive provision of the Act," Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), provides: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." Rent-A-Center, West, Inc. v. Jackson, 2010 U.S. LEXIS 4981, at *14.

1.      **Public Policy Favoring Enforcement of Arbitration Agreement.**

"There is a strong federal policy encouraging the expeditious and inexpensive resolution of

disputes through arbitration." Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1488-89 (10th Cir. 1994). See Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)("Congress declared a national policy favoring arbitration."); Hill v. Ricoh Americas Corp., 603 F.3d 766, 771 (10th Cir. 2010)("[T]he FAA is a 'congressional declaration of a liberal federal policy favoring arbitration agreements.'")(quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. at 24). Congress enacted the FAA with the express purpose of granting arbitration agreements the same enforceability as any other contract provision. See Volt Info. Sciences, Inc. v. Bd. of Trs., 489 U.S. 468, 474 (1989)(stating that Congress designed the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts."). When the applicability of arbitration is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24-25). New Mexico state courts also view arbitration as a "highly favored" method of resolving disputes, "in part because 'it promotes both judicial efficiency and conservation of resources by all parties.'" Piano v. Premier Distrib. Co., 137 N.M. at 59, 107 P.3d at 13.

### 2.    Existence of a Valid Arbitration Agreement.

The Supreme Court has noted that "[a]rbitration is simply a matter of contract between parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (internal citations omitted). Courts must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration. See Hicks v. Cadle, Co., 355 Fed. Appx. 186, 192 (10th Cir. 2009)("We resolve any doubts in favor of arbitrability.")(citing Litton Fin. Printing Div.

v. NLRB, 501 U.S. 190, 209 (1991)); Armijo v. Prudential Ins. Co., 72 F.3d 793, 797-98 (10th Cir. 1995)(stating that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and that "arbitration clauses must be interpreted liberally, and any doubts should be resolved in favor of arbitration," and holding that the plaintiffs had "failed to rebut the presumption of arbitrability.").

While "the presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement, . . . this presumption disappears when the parties dispute the existence of a valid arbitration agreement." Dumais v. Am. Golf Corp., 299 F.3d 1216, 1220 (10th Cir. 2002). See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998) ("When the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away."). In the Tenth Circuit, and in the courts of New Mexico, the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." Avedon Eng'g Inc. v. Seatex, 126 F.3d 1279, 1287 (10th Cir. 1997). See K.L. House Constr. Co. v. City of Albuquerque, 91 N.M. 492, 494, 576 P.2d 752, 754 (1978)(stating that "the courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration."). "Like other contracts . . . [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Center, West, Inc. v. Jackson, 2010 U.S. LEXIS 4981, at *8 (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). In K.L. House Construction Co. v. City of Albuquerque, the Supreme Court of New Mexico held that a valid arbitration clause existed and found that the parties were compelled to arbitrate all disputes when the "subject matter of the dispute has a reasonable relationship to the subject matter of the contract." 91 N.M. at 494, 576 P.2d at 754.

> When a broad and general arbitration clause is used . . . the court should be very reluctant to interpose itself between the parties and the arbitration which they have agreed upon.  When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters.  Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate.

91 N.M. at 494, 576 P.2d at 754.

### 3.   Consideration and Illusory Arbitration Agreements.

"To determine whether the agreement to arbitrate is valid, courts look to general state contract law, with the caveat that state laws that are specifically hostile to arbitration agreements are preempted by the FAA." Salazar v. Citadel Commc'ns Corp., 135 N.M. 447, 450, 90 P.3d 466, 469 (2004)(citations omitted).  "It is for the trial court, and not the arbitrator, to decide whether a valid agreement to arbitrate exists." Sisneros v. Citadel Broad. Co., 140 N.M. at 270-71, 142 P.3d at 39. It is a fundamental tenet of contract law "that each party to a contract has a duty to read and familiarize himself with the contents of the contract, each party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby." Ballard v. Chavez, 117 N.M. 1, 3, 868 P.2d 646, 648 (1994).  Under New Mexico law, "[a] legally enforceable contract requires evidence supporting the existence of an offer, an acceptance, consideration, and mutual assent." Piano v. Premier Distrib. Co., 137 N.M. at 60, 107 P.3d at 14 (internal quotation omitted).

"Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." Talbott v. Roswell Hosp. Corp., 138 N.M. 189, 193, 118 P.3d 194, 198 (Ct. App. 2005).  "A valid contract must possess mutuality of obligation.  Mutuality means both sides must provide consideration." Heye v. Am. Golf Corp., 134 N.M. 558, 562, 80 P.3d 495, 499 (Ct. App. 2003).  Absent evidence of a "bargained-for exchange between the parties," an agreement lacks consideration and is

unenforceable.  Smith v. Vill. of Ruidoso, 128 N.M. 470, 478, 994 P.2d 50, 58 (Ct. App. 1999).
"Under general New Mexico contract law, an agreement that is subject to unilateral modification
or revocation is illusory and unenforceable."  Salazar v. Citadel Commc'ns Corp., 135 N.M. at 450,
90 P.3d at 469.  "This principle applies equally to agreements to arbitrate."  135 N.M. at 450,
90 P.3d at 469.  The Supreme Court of New Mexico has found that, if a party "reserves the right to
change the agreement unilaterally, and at any time," the party "has not really promised anything at
all and should not be permitted to bind the other party."  Salazar v. Citadel Commc'ns Corp.,
135 N.M. at 450, 90 P.3d at 469.

In Dumais v. American Golf Corp., 150 F. Supp. 2d 1182 (D.N.M. 2001)(Vazquez, J.), the
United States District Court for the District of New Mexico was asked to determine if an arbitration
provision contained in an employment handbook was enforceable, and precluded an employee from
bringing a claim for sexual harassment and constructive discharge under Title VII of the Civil Rights
Act of 1964 against her employer.  The employer suggested that two documents the employee
executed when she became an employee constituted a valid agreement to arbitrate such disputes.
The documents included: (i) a form acknowledging that the employee had read and would abide by
the employer's arbitration program -- the "We Can Work It Out" program; and (ii) an
acknowledgment form that the employee would comply with the employment handbook and the
"We Can Work It Out" program.  The Honorable Martha Vazquez, United States District Judge, and
now Chief Judge, for the District of New Mexico, found that the arbitration agreement embodied
in the "We Can Work It Out" program was illusory, because it was executed over two months after
the employee began her employment.  See 150 F. Supp. 2d at 1193.  The agreement also modified
the terms of employment -- it divested the employee's right to have disputes heard in an Article III
court -- without consideration in return for that divestiture.  See 150 F. Supp. 2d at 1193.

Judge Vazquez noted that inconsistent provisions in the employment agreement made it unclear whether the arbitration agreement was binding on the employer, and therefore the potentially unilateral character of the promise to arbitrate made it illusory.  See 150 F. Supp. 2d at 1194.  The Tenth Circuit affirmed Judge Vazquez' holding in a de novo review on appeal.  See Dumais v. American Golf Corp., 299 F.3d 1216 (10th Cir. 2002).  In so doing, the Tenth Circuit stated: "We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."  299 F.3d at 1219.

In Heye v. American Golf Corporation, the New Mexico Court of Appeals considered a question similar to the one that the federal court addressed in Dumais v. American Golf Corp.  The New Mexico Court of Appeals assessed the validity of an arbitration agreement in an employment contract that bound the employee, but not the employer, to arbitrate and that the employee signed after she was hired.  In finding that the agreement was illusory, the New Mexico Court of Appeals noted that the agreement permitted the employer to "amend, supplement, rescind or revise the policy regarding arbitration at its whim." 134 N.M. at 562, 80 P.3d at 499.  Although the employee was bound to arbitrate, the employer "remain[ed] free to selectively abide by its promise to arbitrate," and therefore the employer's "promise to arbitrate [did] not provide the consideration necessary to enforce the arbitration agreement." 134 N.M. at 563, 80 P.3d at 500.

In Piano v. Premier Distributing Co., the plaintiff worked as an administrative assistant for the defendant on an at-will employment basis.  See 137 N.M. at 58-59, 107 P.3d at 13.  During her employment, the defendant presented the plaintiff with an arbitration agreement to sign, with the understanding that, if she did not sign it, the defendant would terminate her employment. See 137 N.M. at 59, 107 P.3d at 13.  The plaintiff signed the agreement, and later, when her employment was terminated, she brought suit against the defendant for wrongful termination; the

defendant moved to compel arbitration.  See 137 N.M. at 59, 107 P.3d at 13.  On appeal of the

district court's denial of the defendant's motion to compel arbitration, the New Mexico Court

of Appeals addressed whether an employer's promise of continued at-will employment

constitutes sufficient consideration for an employee's promise to submit her claims to arbitration.

See 137 N.M. at 60, 107 P.3d at 14.  The New Mexico Court of Appeals found that the employer's

promise was illusory and explained: "The implied promise of continued at-will employment placed

no constraints on Defendant's future conduct; its decision to continue Plaintiff's at-will employment

was entirely discretionary."  137 N.M. at 60, 107 P.3d at 14.

In Lumuenemo v. Citigroup, Inc., No. 08-cv-00830, 2009 U.S. Dist. LEXIS 15654

(D. Colo. Feb. 12, 2009), the Honorable Wiley Y. Daniel, Chief United States District Judge for the

District of Colorado, distinguished the facts in Piano v. Premier Distributing Co. from the facts in

Lumuenemo v. Citigroup, Inc., stating:

> Plaintiff cites Piano v. Premier Distributing Co., 137 N.M. 57, 60, 107 P.3d 11
> (N.M. Ct. App. 2004), as support for her argument.  However, the holding in Piano
> turned on the fact that the plaintiff was an at-will employee prior to signing the
> arbitration agreement, and therefore, the implied promise of continued at-will
> employment did not constitute consideration.  Id. at 60.  Piano is distinguishable
> from the facts before this Court.  Here, Defendant's initial hiring of Plaintiff was
> conditioned on her consent to the terms of the Arbitration Agreement; thus, there was
> consideration in the form of employment.  Further, Defendant does need Plaintiff's
> approval -- Plaintiff had up to 30 days to contest any changes to the Arbitration
> Agreement and/or to decide whether to continue employment based on such changes.
> Moreover, the holding in Piano is not binding on this court.

2009 U.S. Dist. LEXIS 15654, at *14.

In Salazar v. Citadel Communications Corp., the Supreme Court of New Mexico held that,

because Citadel Communications reserved the right to modify any provision of its employee

handbook at any time, including the arbitration agreement contained therein, the agreement to

arbitrate was "an unenforceable illusory promise."  135 N.M. at 452, 90 P.3d at 471.  In contrast,

the New Mexico Court of Appeals in Sisneros v. Citadel Broadcasting Co. found that the arbitration policy at issue restricted Citadel's right to terminate or amend the agreement to arbitrate, and thus, when Citadel terminated Sisneros' employment, Citadel was bound to arbitrate the dispute, just as Sisneros was bound to arbitrate, and therefore mutual obligation existed and the arbitration agreement was not illusory.  See 140 N.M. at 275, 142 P.3d at 43.  Similarly, in Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470 (10th Cir. 2006), the arbitration agreement required the employer to provide ten-days notice to its current employees before amending or terminating the arbitration agreement, and provided that the employer could not amend the agreement if it had actual notice of a potential dispute or claim, nor could it terminate the agreement as to any claims which arose prior to the date of termination.  See 465 F.3d at 478.  The United States Court of Appeals for the Tenth Circuit, applying Oklahoma contract law, found that "[t]he[] limitations [were] sufficient to avoid rendering the parties' Agreement to arbitrate illusory."  465 F.3d at 478.  See Pennington v. Northrop Grumman & Mission Sys. Corp., 269 Fed. Appx. 812, 820 (10th Cir. 2008)(holding that "the reciprocal obligation to arbitrate provides the requisite consideration.").

## ANALYSIS

Parrish does not dispute that she completed and signed Valero's employment application, which includes an agreement to "be bound by and accept as a condition of employment the terms of the *Dialogue* Dispute Resolution Plan and Rules," nor does she dispute that, once her employment with Valero began, she signed an Acknowledgment Form stating that she acknowledged that she had received a copy of the Dialogue plan and understood that all claims arising out of her employment or termination of her employment would be submitted to final and binding arbitration set forth in the Dialogue plan.  Parrish challenges the validity of the agreement to arbitrate, arguing that the offer made to her was illusory and that consideration did not support

the agreement.  Valero argues that two promises constituted sufficient consideration: (i) the offer of employment to Parrish; and (ii) the mutual promise to arbitrate.  The Court concludes that the agreement to arbitrate under the Dialogue plan is valid and enforceable, and will compel Parrish to arbitrate her claims.

## I.     PARRISH'S AGREEMENT TO ARBITRATE UNDER THE DIALOGUE PLAN IS ENFORCEABLE.

Under New Mexico law, a contract is legally enforceable if it is "factually supported by an offer, an acceptance, consideration, and mutual assent." Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 731, 918 P.2d 7, 10 (1996)(quotations omitted).  See Piano v. Premier Distrib. Co., 137 N.M. at 60, 107 P.3d at 14 (applying this test to an arbitration agreement in the employment context).  To be valid and enforceable, mutual consideration must support the arbitration agreement between Parrish and Valero.  Under New Mexico law, "you either have consideration or you do not, and the amount of consideration is not an issue." Richards v. Allianz Life Ins. Co. of N. Am., 133 N.M. 229, 234, 62 P.3d 320, 325 (Ct. App. 2002)(quoted in Pennington v. Northrop Grumman Space & Mission Sys. Corp., 269 Fed. Appx. at 819).

### A.     PARRISH'S SIGNED EMPLOYMENT APPLICATION AND VALERO'S CORRESPONDING OFFER OF EMPLOYMENT IS SUFFICIENT CONSIDERATION.

Parrish argues that the Court should follow the precedent the New Mexico Court of Appeals set forth in Piano v. Premier Distribution Co., which found that continued at-will employment is insufficient consideration to support a binding arbitration agreement.  See 137 N.M. at 60, 107 P.3d at 14 ("The implied promise of continued at-will employment placed no constraints on Defendant's future conduct; its decision to continue Plaintiff's at-will employment was entirely discretionary.").  Valero argues that the plaintiff in Piano v. Premier Distribution Co. signed the arbitration agreement

during her employment, which is distinguishable from the facts in this case, because Parrish signed the agreement to arbitrate when she submitted an application for employment with Valero. Consequently, the consideration was not continued at-will employment, as in Piano v. Premier Distribution Co., but rather, agreeing to the Dialogue plan was a condition of her becoming employed in the first place, i.e., Valero's consideration was the offer of employment in the first instance. According to Parrish, however, regardless of the timing of the agreement, a promise of at-will employment is not valid consideration.

The Court believes that Parrish takes New Mexico contract law too far. According to Parrish's argument, at-will employment contracts in New Mexico could never include arbitration agreements, because the offer of at-will employment is not a sufficient promise to constitute consideration. The Court has found no New Mexico case law, nor has Parrish provided the Court with any case law, that has found any offer of at-will employment is insufficient consideration for a contract. The Supreme Court of New Mexico, rather, seems to accept that a contract for at-will employment, even an implied contract, where the consideration is the offer of employment, is valid. In Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 918 P.2d 7 (1996), the Supreme Court of New Mexico  stated:

> First, we address whether Garcia and the MRGCD entered into an employment contract. "Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent." Hartbarger v. Frank Paxton Co., 115 N.M. 665, 669, 857 P.2d 776, 780 (1993), cert. denied, 510 U.S. 1118 (1994). Indeed, the conduct of Garcia and the MRGCD indicates an offer of employment, acceptance, and consideration. That is, Garcia was offered and he accepted employment with the MRGCD in 1975, and was offered and he accepted the position of Division Manager in 1976. In each instance, he proceeded to carry out the specific tasks required of him in service of the MRGCD, and the MRGCD compensated him accordingly.

Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. at 731, 918 P.2d at 10.

-16-

Moreover, an application for employment containing an agreement to arbitrate if offered employment is fundamentally different than an arbitration agreement introduced after employment has started and based on consideration of continued at-will employment. The bargained-for exchange is the offer of employment in exchange for signing an agreement to participate in the Dialogue plan. Such an agreement is not illusory. Other courts have found that an offer of employment is proper consideration for an arbitration agreement. See Hadnot v. Bay, Ltd., 344 F.3d 474, 477 (5th Cir. 2003)(rejecting the plaintiff's argument that an offer of at-will employment is not sufficient consideration to support an arbitration agreement); Lumuenemo v. Citigroup Inc., 2009 U.S. Dist. LEXIS 15654, at *14 (distinguishing Piano v. Premier Distrib. Co., and finding that "Defendant's initial hiring of Plaintiff was conditioned on her consent to the terms of the Arbitration Agreement; thus, there was consideration in the form of employment."). In Hadnot v. Bay, Ltd., the United States Court of Appeals for the Fifth Circuit stated: "[T]he consideration here -- the combination of Hadnot's application and Bay's responding offer of employment -- is in no way dependent on a period of continued employment in the context of a covenant to arbitrate claims that arise from the period of actual employment, regardless of how long it might continue." 344 F.3d at 477.

Furthermore, the Court also does not believe that the Supreme Court of New Mexico will extend its public policy contract principles as far as Parrish argues -- to invalidate any arbitration agreement as illusory where consideration is in the form of a promise of at-will employment. If New Mexico courts extend their jurisprudence that far, they may begin to act inconsistently with the FAA. Congress enacted the FAA to counteract judicial hostility to arbitration. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). It was also to put contracts with arbitration clauses on the same footing with other contracts. See Rent-A-Center, West, Inc. v. Jackson, 2010

U.S. LEXIS 4981, at *8 ("The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms.").  To invalidate any arbitration agreement in all at-will employment contracts where consideration is in the form of a promise of at-will employment might be inconsistent with federal law.

In Adkins v. Labor Ready, Inc., 303 F.3d 496 (4th Cir. 2002), the United States Court of Appeals for the Fourth Circuit found that "Labor Ready's promise to arbitrate its own claims [was] *a fortiori* adequate consideration for [the arbitration] agreement."  303 F.3d at 501.  In the decision, the Honorable J. Harvie Wilkinson, Chief Judge for the Fourth Circuit, addressed the plaintiff's arguments that West Virginia contract law should invalidate the arbitration agreement at issue, stating:

> Many of Adkins' claims invite us to push the parameters of state law so as to frustrate the intent of the FAA.  This in turn implicates the Supremacy Clause at its core.  The FAA's "liberal federal policy favoring arbitration agreements," Moses Cone, 460 U.S. at 24, means that states cannot single out arbitration agreements for disparate treatment under their laws.  If we were to stretch West Virginia contract law to invalidate this arbitration agreement, we would be doubly guilty of overstepping our bounds: not only in expanding state precedent, but by doing so in pursuit of an outcome that the state itself is not permitted to authorize.

Adkins v. Labor Ready, Inc., 303 F.3d at 505.  Similarly, if the New Mexico courts were to extend the principle in Piano v. Premier Distributions, Co., and find that, not only is continued at-will employment not valid consideration for an arbitration agreement, but that an offer of at-will employment is insufficient consideration for an arbitration agreement, the Court believes that such hostility to arbitration in employment contracts may begin to infringe the FAA's intent to protect against judicial hostility towards arbitration.  The Supreme Court of the United States has found that the FAA covers arbitration agreements in applications for employment.  See Circuit City Stores v. Adams, 532 U.S. 105, 109-10 (2001).  In sum, the Court does not believe that New Mexico courts

would go as far as Parrish contends, not only because there is no indication in New Mexico case law

that an offer of at-will employment is insufficient consideration for an arbitration agreement, but

also because supremacy clause issues counsel against such a drastic showing of hostility towards

arbitration.[2]

**B.     THE MUTUAL OBLIGATION TO ARBITRATE IS ALSO VALID CONSIDERATION.**

Valero argues that, even if New Mexico courts were to find that an offer of at-will

employment is insufficient consideration for the agreement to arbitrate which Parrish signed, the

agreement is still valid because Parrish's and Valero's mutual obligation to arbitrate serves as a

---

[2] The Court need not, and should not, decide the possible constitutional or supremacy issue, or offer an advisory opinion on what the answer would be. See Nw. Austin Mun. Util. No. One v. Holder, 129 S. Ct. 2504, 2508 (2009)(Roberts, C.J.)("Our usual practice is to avoid the unnecessary resolution of constitutional questions."); Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988)("A fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1267 n.7 (10th Cir.2004)("Our usual practice is to avoid the unnecessary resolution of constitutional questions.")(citation omitted); United States v. Baldwin, 541 F. Supp. 2d 1184, 1214 (D.N.M. 2008)(Browning, J.)("The Supreme Court has repeatedly cautioned that the federal courts should not give advisory opinions and should avoid constitutional issues if the decision can rest on non-constitutional grounds."). All the Court is suggesting here is that the serious constitutional or supremacy question that lurks in the background counsels that the Court should not construe New Mexico law in a way that it has not heretofore been construed, or in such an expansive manner as Parrish suggests. See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council, 485 U.S. 568, 575 (1988)("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"); Three Affiliated Tribes of Ft. Berthold Reservation v. Wold Engineering, P. C., 467 U.S. 138, 152 (1984)("In some instances, a state court may construe state law narrowly to avoid a perceived conflict with federal statutory or constitutional requirements."); Secretary of Maryland v. Joseph H. Munson Co., 467 U.S. 947, 977 (1984)(Rehnquist, C.J., dissenting)("It is less intrusive on the legislative prerogative and less disruptive of state policy to limit the permitted reach of a statute only on a case-by-case basis. Such restraint also allows state courts the opportunity to construe a law to avoid constitutional infirmities.").

separate basis for consideration.  Parrish argues that <u>Piano v. Premier Distributions</u> demonstrates that reciprocal promises to submit to arbitration is not sufficient consideration.  Parrish contends that Valero has the unilateral right to modify the arbitration agreement and thus it is illusory.

The law is settled that an arbitration agreement allowing one party the unfettered right to alter the agreement is illusory.  <u>See</u> <u>Dumais v. Am. Golf Corp.</u>, 299 F.3d at 1219 (10th Cir. 2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."); <u>Salazar v. Citadel Commc'ns Corp.</u>, 135 N.M. at 452, 90 P.3d at 471 ("Because the Company has reserved the right to modify any provision of the Handbook at any time, we conclude that the Agreement to Arbitrate is an unenforceable illusory promise.").  The New Mexico Court of Appeals in <u>Sisneros v. Citadel Broadcasting Co.</u> contrasted the arbitration agreement in <u>Piano v. Premier Distribution</u>, for which the New Mexico Court of Appeals concluded that there was no consideration for the arbitration agreement because it permitted the employer to change the agreement at any time.  In <u>Sisneros v. Citadel Broadcasting Co.</u>, the New Mexico Court of Appeals stated: "Unlike the agreements in [<u>Piano v. Premier Distribution</u>], the agreement in the present case restricts Citadel's right to amend or terminate the arbitration agreement once an employee's claim against Citadel accrues.  This is in no way illusory, and it is consideration for the arbitration agreement."  140 N.M. at 275, 142 P.3d at 43.  The New Mexico Court of Appeals found that, when Citadel terminated Sisneros' employment, Citadel was bound to arbitrate the dispute, just as Sisneros was bound to arbitrate, and therefore mutual obligations existed and the arbitration agreement was not illusory.  <u>See</u> 140 N.M. at 275, 142 P.3d at 43.

According to Valero's Dialogue plan, it can only be amended after at least ten days notice to current employees, may not be terminated unless at least thirty days notice has been provided to

employees, and no plan amendment or termination is effective for proceedings that already have been initiated.  See Pena Aff. Exhibit A2, Dialogue Plan and Rules at 4.  Like the arbitration agreement at issue in Sisneros v. Citadel Broadcasting Co., Valero's right to amend or terminate the arbitration agreement is restricted once a proceeding is initiated, and under New Mexico law, such mutuality of obligation to arbitrate is sufficient consideration.  See 140 N.M. at 275, 142 P.3d at 43. The Tenth Circuit has also found that restrictions on amendments or termination of an arbitration agreement may demonstrate a mutual promise to arbitrate and thus satisfy the consideration requirement.  Applying New Mexico law, the Tenth Circuit in Pennington v. Northrop Grumman & Mission Systems Corp., stated: "In the employment context, a reciprocal agreement to arbitrate can provide the requisite consideration so long as the employer does not retain the unilateral authority to terminate or modify the arbitration agreement once the employee's claim has accrued." 269 Fed. Appx. at 819.  See Hardin v. First Cash Fin. Servs., Inc., 465 F.3d at 478 (applying Oklahoma contract law and finding that, if "notice of cancellation is required the promisor is bound sufficiently so that his promise to buy or give notice of cancellation meets the requirement of consideration," and holding that "[t]he[] limitations [were] sufficient to avoid rendering the parties' Agreement to arbitrate illusory.").  Accordingly, the limitations on Valero's ability to change or terminate the Dialogue plan, and the mutual obligation to arbitrate claims the Dialogue plan requires, provide sufficient consideration for Parrish's agreement to arbitrate.  The Court concludes that the arbitration agreement in the Dialogue plan, which Parrish signed both in her application for employment and in the Acknowledgment Form, is valid and enforceable.

Congress, the New Mexico Legislature, and federal and New Mexico courts have expressed a strong public policy favoring arbitration.  This policy, embodied in 9 U.S.C. § 2, requires that the Court compel the parties to adhere to the existing arbitration agreement.  Parrish does not dispute

this nor does she dispute that  all of her claims are subject to the arbitration provision in the Dialogue plan that she signed.  Eligible disputes subject to the Dialogue plan include "any legal or equitable claim, demand, or controversy, whether in tort, in contract, [or] under statute . . . which relates to, arises from concerns, or involves in any way . . . [t]he employment or potential reemployment of an Employee, including the compensation, terms, conditions, or termination of such employment . . . ."  Pena Aff. Exhibit A2, Dialogue Plan and Rules at 3.  Parrish's claims that Valero discriminated against her based on age, sex, and national origin when it terminated her employment, as well as her claims for breach of contract and for breach of the implied covenant of good faith and fair dealing, fall within the scope of the Dialogue plan's arbitration agreement. Under the FAA, enforcement of the agreement to arbitrate set forth in the Dialogue plan is required. Given the FAA's authority, New Mexico case law, and the public policy in favor of arbitration, the Court has a duty to order adherence to the agreement to arbitrate in the Dialogue plan.

## II.   THE COURT WILL COMPEL ARBITRATION AND STAY THE CASE.

The FAA provides that "[a] party aggrieved by the alleged failure . . . or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in a manner provided for in such agreement." 9 U.S.C. § 4.  Upon a finding that a matter is referable to arbitration, the FAA also indicates that the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Notwithstanding the terms of 9 U.S.C. § 3, however, several Circuit Courts of Appeal have concluded that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."   Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001).  See Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000)("The weight of

authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988).  The Tenth Circuit has cautioned that, when one of the parties petitions the court to stay an action pending compulsory arbitration, the mandatory language of 9 U.S.C. § 3 is binding, and it is error for the court to dismiss the action. See Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994).

At the hearing, Parrish's counsel, Mr. Burnette, stated that, if the Court finds that the agreement is valid and compels arbitration, Parrish would like the Court to stay this case. See Tr. at 15:6-18 (Burnette, Court).  Valero's counsel, Mr. Lowry, also stated that, if the Court compels arbitration, Valero would prefer that the Court stay the proceeding.  See id. at 5:3:4 (Lowry).  Because both parties have petitioned the Court to stay the action pending compulsory arbitration, the mandatory language of 9 U.S.C. § 3 is binding, and the Court will stay the case. See Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d at 955.

**IT IS ORDERED** that the Defendant's Motion to Compel Arbitration and Dismiss or Stay Proceedings is granted, and the parties are ordered to follow the arbitration agreement's provisions as expressed in the Dialogue Dispute Resolution Plan and Rules.  The case is stayed pending resolution of the arbitration proceeding.  The parties will provide the Court with a status report every 120 days.

_____
UNITED STATES DISTRICT JUDGE

-23-

*Counsel:*

Jason Michael Burnette
Vogel and Burnette
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Virginia C. Honeyman
Valero Retail Holdings, Inc.
San Antonio, Texas

-- and --

Jeffrey L. Lowry
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

      *Attorneys for the Defendant*